UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN LITTLEJOHN,<br><br>                    Plaintiff,<br><br>        v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                    Defendant. | Case No. 2:23-cv-632-CSK<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 14, 19) |

Plaintiff Benjamin Littlejohn seeks judicial review of a final decision by Defendant Commissioner of Social Security denying his application for Supplemental Security Income.[1] (ECF No. 1.) In his summary judgment motion, Plaintiff contends the Administrative Law Judge ("ALJ") erred in finding unpersuasive the opinions of the medical sources concerning Plaintiff's mental health impairments. Plaintiff seeks a remand for further proceedings. The Commissioner opposed Plaintiff's motion, filed a cross-motion for summary judgment, and seeks affirmance.

For the reasons that follow, Plaintiff's motion is DENIED; the Commissioner's cross-motion is GRANTED; and the Commissioner's final decision denying benefits is AFFIRMED.

---

[1] This action proceeds before the undersigned on the consent of all parties pursuant to 28 U.S.C. § 636(c). (ECF Nos. 7, 9, 11.)

## I. SOCIAL SECURITY CASES: FRAMEWORK & FIVE-STEP ANALYSIS

The Social Security Act provides benefits for qualifying individuals unable to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(a). When an individual (the "claimant") seeks Social Security disability benefits, the process for administratively reviewing the request can consist of several stages, including: (1) an initial determination by the Social Security Administration; (2) reconsideration; (3) a hearing before an ALJ; and (4) review of the ALJ's determination by the Social Security Appeals Council. 20 C.F.R. § 416.1400(a).

At the hearing stage, the ALJ is to hear testimony from the claimant and other witnesses, accept into evidence relevant documents, and issue a written decision based on a preponderance of the evidence in the record. 20 C.F.R. § 416.1429. In evaluating a claimant's eligibility, the ALJ is to apply the following five-step analysis:

> **Step One**: Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to step two.
>
> **Step Two**: Does the claimant have a "severe" impairment? If no, the claimant is not disabled. If yes, proceed to step three.
>
> **Step Three**: Does the claimant's combination of impairments meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")? If yes, the claimant is disabled. If no, proceed to step four.
>
> **Step Four**: Is the claimant capable of performing past relevant work? If yes, the claimant is not disabled. If no, proceed to step five.
>
> **Step Five**: Does the claimant have the residual functional capacity to perform any other work? If yes, the claimant is not disabled. If no, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. § 416.920(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020).

If the ALJ finds a claimant not disabled, and the Social Security Appeals Council declines review, the ALJ's decision becomes the final decision of the Commissioner. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-final agency action). At that point, the claimant may seek judicial review of the ALJ's decision by a federal district court.

42 U.S.C. § 405(g).

## II. FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

Plaintiff previously applied for, and was denied, benefits under the Social Security Act. (*See* Administrative Transcript ("AT") 178-188, available at ECF No. 10.) The previous ALJ found Plaintiff not disabled between June 23, 2008 and January 2, 2013. (*Id.*) Relevant here, the previous ALJ found Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, except that he was limited to "simple and repetitive tasks in non-public settings with occasional contact with co-workers and supervisors." (AT 182.)

On June 24, 2020, Plaintiff applied for Supplemental Security Income, alleging he has been disabled since May 15, 2020. (AT 304-05.) Plaintiff claimed disability due to diabetes, arthritis, and schizophrenia. (*See* AT 235.) Plaintiff's application was denied initially and upon reconsideration; he then sought review before an ALJ. (AT 208, 228, 251-53.) Plaintiff appeared with a representative at an August 26, 2021 remote hearing before an ALJ where Plaintiff testified about his impairments and where a vocational expert testified about hypothetical available jobs. (AT 149-74.) The ALJ then ordered a Psychological Consultative Exam for Plaintiff, but Plaintiff failed to appear for his October 28, 2021 exam. (AT 669.) After Plaintiff failed to appear for his Psychological Consultative Exam, the ALJ provided Plaintiff with the opportunity to respond, provide additional documents, request a supplemental hearing, or subpoena witnesses or records. (AT 406-07.) Plaintiff and his counsel did not respond at all to the ALJ.

On January 28, 2022, the ALJ issued a decision finding Plaintiff was not disabled. (AT 21-32.) Before turning to the five-step analysis, the ALJ took note of Plaintiff's prior proceedings, found the overall presumption of non-disability rebutted because of a change in circumstances in Plaintiff's physical impairments and his age category, and because there had been a change in the Listings. (AT 22.) However, the ALJ found no change in Plaintiff's mental residual functional capacity since the prior decision. (*Id.*)

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity

since June 23, 2020. (AT 23.) At step two, the ALJ determined Plaintiff had the following severe impairments: left hand rheumatoid arthritis, left shoulder osteoarthritis, intellectual disorder, and schizophrenia. (*Id.*) At step three, the ALJ found Plaintiff's combination of impairments did not meet or medically equal any Listing, including Listings 12.03 (schizophrenic spectrum, other psychotic disorders) and 12.05 (intellectual disorders). (AT 24.) The ALJ found Plaintiff moderately limited in understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself. (AT 24-25.) For support, the ALJ cited Plaintiff's function reports and medical records. (*Id.*)

The ALJ then found Plaintiff had the residual functional capacity to perform medium work (20 C.F.R. § 404.1567(c)), except that Plaintiff could:

> Occasionally climb; frequently stoop, kneel, crouch, and crawl; occasionally reach overhead with his left extremity; frequently handle and finger with his left upper extremity; perform simple repetitive tasks; have no public contact and occasional interactions with coworkers and supervisors.

(AT 25.) In formulating this residual functional capacity, the ALJ stated he considered Plaintiff's symptom testimony, the objective medical evidence and other evidence, and the medical opinions and prior administrative medical findings. (AT 25.) This included Plaintiff's symptom testimony from the August 2021 hearing (AT 26), a June 24, 2020 function report (*id.*), the medical evidence in the record from October 16, 2018 through April 2, 2021 (AT 26-28), some of Plaintiff's stated daily activities (AT 28-29), a medical opinion from Dr. Patricia Samuelson, M.D. (AT 29), and opinions expressed in the prior administrative medical findings (AT 29-30). Relevant here, the ALJ found each of the opinions regarding Plaintiff's mental impairments to be unpersuasive. (AT 29-30.) The ALJ reasoned that opinions expressed in the 2011 prior administrative medical findings were too remote in time, and the prior ALJ was unpersuaded by the more limiting portions of those opinions. (AT 29.) The ALJ noted that in the 2020 prior administrative medical findings, the medical sources were unable to evaluate Plaintiff's mental impairments due to a lack of evidence. (AT 30.) The ALJ recognized Dr. Samuelson's

May 15, 2020 and April 2, 2021 opinions that Plaintiff was disabled due to his paranoid schizophrenia and could not interact with co-workers, clients, or supervisors. (AT 29, citing AT 434 and 628.) The ALJ found these unsupported and inconsistent with Plaintiff's current treatment records. (AT 29.) The ALJ noted Plaintiff failed to attend his 2021 Psychological Consultative Exam, and neither Plaintiff or his counsel responded to the ALJ to provide information or additional documents, request a supplemental hearing, or subpoena witnesses or records. (AT 21 (citing AT 406-07, 669).) The ALJ concluded the residual functional capacity from the 2013 decision was proper to adopt because Plaintiff had presented no evidence of any material changes. (AT 30.)

Based on the residual functional capacity, the ALJ determined at step four that Plaintiff was incapable of performing past relevant work. (AT 30.) However, at step five, the ALJ found Plaintiff capable of performing other jobs in the national economy, including: (i) Hand Packager (medium, SVP 2, with 77,000 jobs in the national economy); (ii) Crate Liner (medium, SVP 2, with 3,000 jobs in the national economy); and (iii) Cleaner II (medium, SVP 1, with 51,000 jobs in the national economy).[2] (AT 31.) Thus, the ALJ found Plaintiff not disabled during the relevant period. (AT 32.)

On February 10, 2023, the Appeals Council rejected Plaintiff's appeal and declined to consider newer medical records generated after the ALJ's decision was issued. (AT 1-4.) Plaintiff then filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 14, 19.)

///

---

[2] "Medium" in the ALJ's step-five determination references medium work, as defined by 20 C.F.R. § 404.1567(c). "SVP" refers to the "specific vocational preparation" time needed for occupations listed in the Commissioner's "Dictionary of Occupational Titles." Unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9. *See* Social Security Ruling, SSR 00-4p.: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 65 Fed. Reg. 75,759, 75,760 (Dec. 4, 2000).

### III. ISSUES PRESENTED FOR REVIEW

Plaintiff contends the ALJ erred by failing to support his conclusions regarding the medical opinions surrounding Plaintiff's mental health impairments.[3] Plaintiff argues the ALJ inaccurately construed medical records when discounting the opinion of Dr. Samuelson, and completely ignored medical opinions expressed by medical professionals at El Hogar Guest House. Plaintiff contends the ALJ could have developed the record further, including ordering a consultative exam or questioning these medical sources further. Plaintiff seeks a remand for further proceedings.[4] (ECF No. 14, 20.)

The Commissioner responds that the ALJ relied on substantial evidence in finding Dr. Samuelson's opinions unsupported, and there was no error by the ALJ. Alternatively, the Commissioner argues that even if the court finds error, any error in the formulation of the mental limitations in the residual functional capacity is harmless given the jobs cited at step five. Further, the Commissioner contends the ALJ did not need to consider the statements from the El Hogar sources because they were mere statements of disability, an issue reserved for the Commissioner. Finally, the Commissioner contends Plaintiff waived his argument that the ALJ could have further developed the record because it was not clearly raised. The Commissioner maintains the ALJ's decision is supported by substantial evidence and should be affirmed. (ECF No. 19.)

### IV. DISCUSSION

#### A. Legal Standards

The Commissioner's final decision is subject to judicial review by the district court. 42 U.S.C. § 405(g). The court may enter a judgment affirming, modifying, or reversing

---

[3] Plaintiff initially argued the ALJ failed to state "specific and legitimate reasons" for discounting the opinions of the "treating and examining" physicians. (ECF No. 14.) The Commissioner noted this standard has been displaced under the revised regulations. (ECF No. 19.) Plaintiff conceded in his reply brief that the proper standard for his case is for the ALJ to evaluate medical opinions for their "persuasiveness." (ECF No. 20.)

[4] Plaintiff initially argued for a remand for benefits. (ECF No. 14.) The Commissioner argued this remedy would be improper (if the Court found for Plaintiff) because an ALJ would need to resolve conflicts in the record in further proceedings. (ECF No. 19.) Plaintiff conceded to this argument in his reply brief. (ECF No. 20 at 5.)

the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

1.  Medical Opinions

For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from [a plaintiff's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ is to evaluate medical opinions and prior administrative medical findings by considering their "persuasiveness." *Id.*

In determining how "persuasive" the opinions of medical sources and prior administrative medical findings are, an ALJ must consider the following factors: "supportability, consistency, treatment relationship, specialization, and 'other factors.'" 20 C.F.R. § 416.920c at sub. (b) and (c)(1)-(5). Despite a requirement to "consider" all factors, the ALJ only need articulate a rationale on how the supportability and consistency factors were considered, as they are "the most important factors." *Id.* at sub.

(b)(2). A medical opinion is supported if the medical source explains the relevant objective medical evidence. *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). A medical opinion's consistency concerns its alignment with other medical and nonmedical sources in the record. *Id.* at 792. The regulations grant the ALJ flexibility to weigh the supportability and consistency factors based on all evidence in the record. 20 C.F.R. § 416.920c(c)(1)-(2). The ALJ is not required to articulate findings on the remaining factors (relationship with plaintiff, specialization, and "other") unless "two or more medical opinions or prior administrative medical findings about the same issue" are "not exactly the same," and both are "equally well-supported [and] consistent with the record." *Id.* at sub. (b)(2)-(3). Generally speaking, the ALJ does not need to discuss every piece of evidence when interpreting the evidence and developing the record. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

  **B.**  **Analysis**

  Here, the Court finds the ALJ did not err in resolving the medical opinion evidence in the record and otherwise supported his conclusions with substantial evidence—none of which was misconstrued. *See Woods*, 32 F.4th at 788.

  Regarding the May 15, 2020 and April 2, 2021 opinions of Dr. Samuelson, the ALJ found each unpersuasive because they were not consistent with treatment records and were otherwise unsupported, "conclusory" summaries. (AT 29.) Dr. Samuelson's May 15, 2020 two-sentence letter states: "[Plaintiff] is completely and permanently disabled by paranoid schizophrenia. He has had psychiatric care which has not improved his condition enough to allow him to interact appropriately with coworkers, clients or supervisors." (AT 434.) Dr. Samuelson's April 2, 2021 two-sentence letter states: "[Plaintiff] is completely and permanently disabled by paranoid schizophrenia. He has had extensive psychiatric evaluation, and multiple medication regimens have not improved his condition enough to allow him to interact appropriately and predictably with coworkers, clients or supervisors." (AT 628.)

  First, the ALJ did not err in failing to adopt Dr. Samuelson's statement that Plaintiff

8

was "completely and permanently disabled by paranoid schizophrenia" because this is an issue reserved to the Commissioner. 20 C.F.R. § 416.920b(c) (noting that "statements that you are or are not disabled" are inherently neither valuable nor persuasive, and so the ALJ need not provide any analysis on such statements); *see also O'Brien v. Kijakazi*, 2023 WL 3735582, at *1 (9th Cir. May 31, 2023) (noting the regulations allow for an ALJ to disregard statements that a plaintiff is disabled).

Second, as to Dr. Samuelson's statements that Plaintiff could not interact appropriately and predictably with co-workers, clients, or supervisors, the statements were "brief, conclusory" opinions that fail to describe clinical findings on which they rely and are inadequate to meet the supportability standard. *See Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (quoting *Ford*, 950 F.3d at 1154).

Further, the ALJ's inconsistency finding is substantially supported through the decision's analysis of other evidence in the medical record noting Plaintiff interacted normally with his health care providers, including Dr. Samuelson, WellSpace staff, and those at El Hogar Guest House. (AT 29.) For example, in the section resolving Dr. Samuelson's opinion, the ALJ found the doctor did not note any significant mental health issues at Plaintiff's May and July 2019 visits. (*See id.* (citing AT 444 (noting "normal" psychiatric details at the May office visit) and 451 (noting Plaintiff's "functional status" had not changed at the July office visit)).) The ALJ noted a "warm handoff" to behavioral health after a May 15, 2020 visit, but no follow up instructions from Dr. Samuelson aside from a simple refilling of medication at a November 9, 2020 visit. (*See* AT 462, 538.) Further, the ALJ noted earlier in the decision that multiple medical records reflected that El Hogar staff found Plaintiff cooperative and engaging. (AT 560, 574, 598.) The ALJ noted multiple mental status examinations with similar findings, and noted there were no psychiatric hospitalizations, extended or specialized care. (AT 26 (citing AT 444, 490).) The ALJ also noted Plaintiff's reports of auditory hallucinations when he ceased taking

9

his medications, but that medication partially helped with these symptoms when Plaintiff was compliant with his prescription regimen. (AT 27 (citing AT 584, 598).) Substantial evidence supports the ALJ's inconsistency finding. *See Kitchen v. Kijakazi*, 82 F.4th 732, 740-41 (9th Cir. 2023) (finding substantial evidence supported ALJ's determination that medical source's assessment of severe limitations was inconsistent with the medical record, including the source's own unremarkable mental status examinations); *Woods*, 32 F.4th at 793 (finding ALJ's inconsistency finding supported by substantial evidence where the decision noted other medical records that conflicted with the medical source's opinion of a more severe mental limitation).

Plaintiff contends the ALJ inaccurately summarized the record when resolving Dr. Samuelson's opinion. (ECF No. 14 at 10.) However, a review by the undersigned finds the ALJ correctly summarized the observations made by medical sources throughout Plaintiff's recent treatment history. The ALJ also took into consideration that health care professionals at WellSpace and El Hogar noted Plaintiff's diagnosis of paranoid schizophrenia and the many limitations Plaintiff experienced due to his diagnosis. (*See, e.g.*, AT 615 (October 16, 2018 record from El Hogar noting Plaintiff's paranoid delusions).) The ALJ did not ignore these issues, and took them into account along with the rest of the record. (*See, e.g.*, AT 27 (noting Plaintiff's experiencing of auditory hallucinations when not on his medications, but noting Plaintiff's physicians increasing his medication to target these conditions, which improved Plaintiff's symptoms when he took his medication) (citing AT 584, 614 (records from El Hogar from October 16, 2018 and May 22, 2019)).) Plaintiff's mental health impairments were found to be severe (AT 23), and he was assigned a residual functional capacity that included the limitations of "simple, repetitive tasks, no public contact and occasional interactions with coworkers and supervisors" (AT 25). The decision demonstrates that the ALJ was properly resolving ambiguities and conflicts. *See Ford*, 950 F.3d at 1154. The undersigned is not permitted to reweigh the evidence to produce a different outcome. *Ford*, 950 F.3d at 1154 (reminding that the ALJ's decision must be upheld where the evidence is

susceptible to more than one rational interpretation).

Plaintiff also contends the ALJ completely ignored the opinion of a medical source at El Hogar, citing to medical records that do appear to "mirror" those at WellSpace. (ECF No. 14 at 10.) However, most of these records do not concern what Plaintiff could or could not do despite his mental impairments.[5] *See* 20 C.F.R. § 416.913(a)(2) (defining a medical opinion as concerning a claimant's ability to perform the mental demands of work activities, among other things). There does exist a record from an El Hogar physician's assistant, generated October 19, 2018, that states Plaintiff "cannot hold down employment due" to his mental impairments. (AT 578.) The ALJ was not required, however, to provide any analysis on any statements pronouncing Plaintiff completely disabled. *See* 20 C.F.R. § 416.920b(c)(3)(i). Thus, the ALJ did not err in disregarding this October 2018 statement or any other such statement in the record. *See O'Brien*, 2023 WL 3735582 at *1.

Finally, Plaintiff appears to argue the ALJ failed to develop the record when issuing the decision without conducting a consultative examination. (*See* ECF No. 14 at 12.) ALJs have an affirmative duty to assist with developing the record where the evidence is ambiguous or the record is inadequate. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted). Here, the ALJ attempted to do just that when he ordered a Psychological Consultative Exam of Plaintiff after the August 2021 hearing. But Plaintiff failed to even attend this exam, and when provided with the opportunity, Plaintiff and his counsel failed to respond to the ALJ, provide additional documents, request a supplemental hearing, or subpoena witnesses or records. (*See* AT 669 (medical record noting Plaintiff failed to attend the October 28, 2021 Psychological Consultative Exam ordered after the August 2021 hearing); AT 406-07 (November 10,

---

[5] Plaintiff's summary of the El Hogar treatment records in his opening brief do not align with the citations to the administrative transcript. (*Cf., e.g.,* ECF No. 14. at 3 (citing, e.g., CT 592 for the proposition that El Hogar staff "noted plaintiff cannot hold down employment due to his perceptual disturbances, and paranoia"); with AT 592 (El Hogar staff's note that Plaintiff "no-showed" for appointment, which does not discuss Plaintiff's mental impairments or ability to work).

2021 letter from ALJ).) Even assuming that further development of the record was required, the ALJ satisfied this duty by keeping the record open for five months after the hearing and by scheduling the psychological exam—which Plaintiff failed to attend. *See Chase v. Colvin*, 665 F. App'x 583, 586 (9th Cir. 2016); 20 C.F.R. § 416.918 (noting that if a claimant fails to take part in a consultative examination without good reason, the claimant may be found not disabled). Thus, there was no error in the ALJ's decision to close the record and issue his decision on January 28, 2022.

## V.     CONCLUSION

Having resolved all of the points of error raised by Plaintiff, the Court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error. *See Ford*, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence").

## ORDER

Accordingly, the Court ORDERS:

1. Plaintiff's motion for summary judgment (ECF No. 14) is DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of the Court is directed to CLOSE this case.

Dated: July 3, 2024

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

3, litt.632